IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMIE RUNNING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1711-K |
| | § | |
| GUARANTY FEDERAL BANK FSB, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Guaranty Federal Bank FSB's ("Guaranty Bank")

Motion for Summary Judgment (doc. 28).  For the following reasons, the Court

**GRANTS** the motion.  Also before the Court is Defendant's Objections to and Motion

to Strike Portions of Plaintiff's Summary Judgment Evidence (doc. 35).  The Court

**DENIES** that motion as moot.

## I.      Factual Background

Guaranty Bank operates approximately 100 banking centers in Texas.  Chuck

Eikenberg ("Eikenberg") is the Executive Vice-President in Retail Banking, which

requires him to oversee the distribution, sales, service, and operations of the banking

centers.  At the time of the incident in question, the banking centers were divided into

eight regions, each supervised by a Region Manager who reported directly to Eikenberg.

Plaintiff Jamie Running ("Plaintiff") began working at Guaranty Bank on August

31, 1998, in a banking center located in the East Texas Region.  At the time her employment began, Richard Lynch ("Lynch") was Region Manager of the East Texas Region.  Shortly after her hiring, Plaintiff expressed an interest to Lynch of becoming a licensed investment representative as well getting involved in Guaranty Bank's management program.  As a result, Lynch then moved Plaintiff to a banking center in Corsicana in late 1998 or early 1999.  The banking regions were reorganized, and the Corsicana banking center was moved to the DFW East Region, managed at the time by Lynne Duncan ("Duncan"), a female.  In 1999, Plaintiff was chosen by Duncan to be Banking Center Manager ("BCM") of the Ennis banking center.  Shortly thereafter, Plaintiff was chosen as BCM of the Kaufman banking center.  In 2003, the banking regions were again reorganized, and the Kaufman banking center was relocated from DFW East Region to the East Texas Region, which was still managed by Lynch. (Plaintiff still held this position at the time the suit was initiated.)

     In early 2006, the position of the DFW East Region Manager ("DFW East") became open after Duncan left that position to fill another within Guaranty Bank.   In April 2006, the DFW East position was posted internally and externally by Eikenberg, who was responsible for filling this position.  Eikenberg received applications from four internal candidates–Corey Andrews, John Jacobs, Sue Sparks, and Plaintiff.  At the time he submitted his application, Corey Andrews ("Andrews") was an Investment Sales Manager ("ISM") for the DFW East Region, a position he had held for approximately one year.  Prior to that position, Andrews had been a BCM at two different Guaranty

Bank banking centers.  Andrews had previously worked at another banking organization.

Plaintiff decided to apply for the DFW East position after being contacted directly by

Eikenberg and Lynch about the opening.

Eikenberg personally interviewed all four candidates.  In addition, he sought

feedback from the current and prior managers of each candidate.  As to Andrews,

Eikenberg spoke with Deann Mathers ("Mathers"), Loren McMurray ("McMurray"),

and  Duncan.   Mathers  indicated  Andrews'  sales  skills,  attitude,  motivation,  and

knowledge  would  make  him  a  good  Region  Manager.   She  also  indicated  his

organizational skills and "ability to manage the scope of the job" would be challenges for

him.   Duncan  said  Andrews  was  a  strong  leader  with  good  communication  and

motivational skills who already knew all the DFW East team and their strengths and

weaknesses.  She felt all this would allow him "to hit the ground running".  Duncan also

indicated that his challenges lay with his organization and ability to manage the scope

of the job.  McMurray shared the same thoughts on Andrews as Mathers and Duncan.

As for Plaintiff, Eikenberg spoke with Lynch, Duncan, and Ron Murff ("Murff"),

who was Eikenberg's boss.  Lynch said Plaintiff was a very good sales manager who got

results.   He  also  expressed  concerns  about  her  peer  relationships,  including  conflict

management challenges, her unwillingness "to share information as aggressively as she

should with her peers," and her ability to manage "outside the four walls of a Banking

Center Manager position."  Duncan stated that, from a sales management point of view,

Plaintiff  was  very  good  and  successful  BCM,  and  she  was  able  to  get  results.   But,

Duncan also stated that Plaintiff did not have good relationships with the DFW East Banking Center Managers and would not be as well received in the DFW East position as Andrews would, noting particularly challenges she had in her peer relationships. When Eikenberg told Murff about Lynch's and Duncan's feedback on Plaintiff's issues with her peer relationships and management, he said he understood her to have a reputation for peer relationship problems.

Besides the personal interviews and feedback from the managers, Eikenberg looked for certain characteristics in the person who would fill the DFW East position:

> I was very interested in somebody who had a particular management style, particular leadership style, given the challenges that I was experiencing in the region at that point in time. I was looking for somebody who was, number one, aggressive, and enthusiastic and passionate about the position. I was interested in somebody who was very knowledgeable of the challenges of the market, which included excessive turnover, which included challenged employee morale, and I was looking for somebody who came in with a particular management style to be able to address those particular issues. I was also looking for somebody who did have experience beyond the four walls of the Banking Center and who had some level of experience managing geography and managing scope.

The Region Manager position requires the person to manage multiple offices across a geographic region, including Banking Center Managers. Eikenberg ultimately chose Andrews for the DFW East position. When Eikenberg ranked the candidates, Andrews was first and Plaintiff was "a distant second."

Eikenberg informed Plaintiff of his decision before it was revealed to the rest of the bank. At a later point in time, Eikenberg informed Plaintiff that one of the reasons she was not chosen for the DFW East position was the feedback related to conflicts in

her peer relationships.  Plaintiff expressed surprise at Eikenberg's statement, and told him she had "never had a conflict with any peer" and "had never received that feedback from either one of [her] supervisors."  When Plaintiff asked Eikenberg for more explanation, he told her to call Lynch and Duncan.

Plaintiff spoke with Lynch first.  When Plaintiff confronted Lynch about Eikenberg's statement about her difficult peer relationships, Lynch told her Eikenberg never asked him for feedback on Plaintiff in relation to this position.  Lynch said he did, however, tell Eikenberg that Plaintiff could be counted on for production, always makes her goals, and is a top manager.  Plaintiff also recalls that Lynch told her he did not know about Plaintiff having any conflict with peers.  Lynch did not explain to Plaintiff what he understood "conflict" to be, but he stated in his declaration that he understood that to mean a verbal or physical altercation.  Lynch then suggested to Plaintiff that these statements about Plaintiff's peer relationships came from Duncan, who, Lynch suggested, felt threatened by Plaintiff.  During this conversation, Plaintiff did ask Lynch how to change any negative perception of her amongst her peers.  Lynch made suggestions, such as arriving early to the managers' meeting, which Plaintiff began doing immediately.

Plaintiff then spoke with Duncan, who admitted she did tell Eikenberg that Plaintiff had conflicts with her peers.  When pressed by Plaintiff, Duncan explained that others were jealous of Plaintiff because she is a high producer, which rubbed people the

wrong way.  Duncan also told Plaintiff that she needed to have a happier tone in her telephone voice, which advice Plaintiff heeded.

At a later time, Plaintiff had another conversation with Lynch.  During that conversation, Lynch told Plaintiff he believed Eikenberg wanted someone like him he could drink beer with and have male bonding time.  Plaintiff did not know the basis of Lynch's belief about Eikenberg wanting a male in the DFW East position.  Plaintiff then decided in early 2007 that she had been discriminated against based on gender and age, and she filed this suit.

## II.     Guaranty Bank's Motion for Summary Judgment

Plaintiff asserts gender and age discrimination claims against Guaranty Bank based on Eikenberg's failure to promote her to the DFW East position, and the selection of Andrews, a male younger than 40 year old, for that role instead. Guaranty Bank moves for summary judgment, arguing that there is no genuine issue of material fact whether it did not promote Plaintiff based on her gender and/or age, and, therefore, Plaintiff's gender and age discrimination claims must be dismissed.  Because Plaintiff failed to meet her burden to show a genuine issue of material fact as to whether Guaranty Bank's proffered reasons for failing to promote her are pretext for discriminating against her based on her age and/or gender, the Court finds summary judgment is appropriate on all of Plaintiff's claims.

      **A.**      **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57(1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

      **B.**      **Gender Discrimination**

      1.      Applicable Law

Under Title VII, an employer cannot fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  Thus, the Title VII inquiry is whether the defendant intentionally discriminated against

the plaintiff based upon one of the factors prohibited by Title VII. *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir. 2003) (*citing United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983)).

To prevail on a Title VII claim, a plaintiff must demonstrate a *prima facie* case of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 414, 420 (5th Cir. 2006). If the defendant meets its burden, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either: (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), and the protected characteristic was the determinative basis for the employment action; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)(gender discrimination); *see also Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005).

Under the pretext alternative, the plaintiff bears the ultimate burden of proving discrimination. *Keelan,* 407 F.3d at 340-41 (*citing Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 & n.3 (2003)). However, if the plaintiff demonstrates under the mixed-motive alternative that gender was a motivating factor in the employment decision, the burden shifts again to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. *Keelan,* 407 F.3d at 341. If the

employer fails to carry this burden, plaintiff will prevail under the mixed-motive alternative. *Id.*

Workplace comments may be used as direct or circumstantial evidence of employment discrimination. Direct evidence is evidence which, if believed, proves the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir.2003). In the employment discrimination context, this includes "any statement or document which shows on its face that an improper criterion served as the basis for an adverse employment action." *Id.* at 415. However, if an inference is required for the evidence to be probative as to an employer's discriminatory animus in the adverse employment action, the evidence is circumstantial, not direct. *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897-98 (5th Cir.2002).

In order for a discriminatory comment or remark to constitute direct evidence of employment discrimination, the Fifth Circuit holds that the comment must meet the strict four-factor test set forth in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.1996). *See also Acker v. Deboer, Inc.,* 429 F.Supp.2d 828, 838 (N.D.Tex. 2006). Under the *CSC Logic* test, a workplace remark constitutes direct evidence of discrimination if it is: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the employment decision at issue; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Brown,* 82 F.3d at 655; *Acker,* 429 F.Supp. at 838.

Where an alleged remark does not qualify as direct evidence of discrimination under the four-factor *CSC Logic* test, it may still be probative of discriminatory intent, so long as it is accompanied by other evidence of pretext. *Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 577 (5th Cir. 2003).

## 2.    Direct Evidence of Gender Discrimination

Plaintiff argues direct evidence exists proving she was discriminated against in not receiving a promotion to the DFW East position. In a conversation she had with Lynch, her supervisor, after Andrews was promoted, Lynch told Plaintiff he believed Eikenberg wanted someone like him he could drink beer with and have male bonding time.

The Court does not find Lynch's statement to be direct evidence of discriminatory animus. This statement does not meet the third factor of the *CSC Logic Test* because it is not directly attributable to Eikenberg, the individual with authority over the promotion decision. It was a statement made by Lynch about Lynch's own personal belief as to why Andrews was chosen by Eikenberg. In her deposition, Plaintiff stated she did not know the basis of Lynch's belief about Eikenberg wanting a male in the DFW East position. Lynch testified in his Declaration that he did not speak with Eikenberg about his criteria in making his selection for the DFW East position, and had no personal knowledge about that criteria either. He also testified that he had no personal knowledge of Eikenberg making any comments based on gender or taking any action that reflected a gender bias. For the Court to find this statement to be evidence of age discrimination would require an inference or presumption about Eikenberg's

motivation or guiding force in making his choice.  *See Fabela*, 329 F.3d at 415 (not direct evidence if inference or presumption required); *Acker*, 429 F.Supp.2d at 840.  Therefore, because such an inference is necessary, it is merely circumstantial, rather than direct, evidence.  Accordingly, Plaintiff must rely on circumstantial evidence to prove her gender discrimination claim, and the Court will employ the modified *McDonnell Douglas* analysis.

      3.     <u>Burden Shifting Framework</u>

          a.     Guaranty Bank's Burden to Show Legitimate, Non-Discriminatory Reason

Under the modified *McDonnell Douglas* approach, Plaintiff must first establish a prima facie case of discrimination.  Guaranty Bank does not dispute Plaintiff's ability to establish a *prima facie* case of gender discrimination.  Therefore, the burden shifts to Guaranty Bank to articulate a legitimate, non-discriminatory reason for failing to promote Plaintiff.  Guaranty Bank states that Andrews was chosen for the DFW East position by Eikenberg because Andrews was the most qualified candidate.   Eikenberg ranked Andrews first with Plaintiff a distant second as to qualifications.  Eikenberg articulated certain reasons for choosing Andrews: (1) Andrews had the management and leadership style Eikenberg wanted for that position; (2) Andrews' most recent experience with Guaranty Bank had provided him experience in DFW East banking centers, where the new position was located; and (3) Andrews exhibited positive interactions with his superiors and peers, and would be received well in DFW East region.   The Court

concludes Guaranty Bank has set forth legitimate, non-discriminatory reasons for the adverse employment action. *See Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 251-53 (1981); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881-82 (5th Cir. 2003) (employer's explanation that it chose the "'best qualified'" candidates was legitimate, non-discriminatory reason for failure to promote).

> b.      Plaintiff's Burden to Show Pretext

Because Guaranty Bank has carried its burden, the burden shifts back to Plaintiff. She must set forth sufficient evidence raising a genuine issue of material fact that (1) Guaranty Bank's given reasons for failing to promote her are false and simply pretext for discriminating against her (pretext alternative) or (2) Guaranty Bank's reasons, while true, are only part of the reason for its decision and another motivating factor is Plaintiff's gender (mixed-motives alternative).

In her responsive briefing, Plaintiff argues that Guaranty Bank's reasons for failing to promote her are false and merely pretext. She does not admit, even as an alternative argument, that any of the reasons are true; therefore, Plaintiff must proceed under the pretext standard. *See, e.g., Richardson v. Monitronics Intl., Inc.,* 434 F.3d 327, 333 (5th Cir. 2005) (mixed-motive framework applies where employee concedes that discrimination was not the *sole* reason for his or her discharge) (emphasis in original); *Jackson v. Watkins,* 2009 WL 1437824, *7 (N.D. Tex. 2009) (Fitzwater, C.J.) (employee who did not admit that any of employer's reasons were true opted to proceed under pretext model and was required to show that employer's proffered reasons for its actions were pretextual);

*Kretchmer v. Eveden, Inc.,* 2009 WL 854719, *7 n.8 (N.D. Tex. 2009)(Fitzwater, C.J.) (same).  Accordingly, to meet her burden, Plaintiff must establish through sufficient evidence a genuine issue of material fact exists that each of Guaranty Bank's reasons are pretext.  *See Jackson,* 2009 WL 1437824, at *7 (citing *Wallace*, 271 F.3d at 220).

The Court does note that Plaintiff makes an assertion that she believes Eikenberg did not make this decision on his own, but instead, "ran it up the flagpole to some other upper management."  Although she is not certain who exactly that is, Plaintiff assumes it was Murff, Eikenberg's boss.  However, Plaintiff has not provided any evidence that anyone other than Eikenberg made the decision of whom to place in the DFW East position.  Therefore, the Court finds this argument has no merit.

### 1) Use of Subjective Criteria

Plaintiff argues that Eikenberg's use of subjective criteria, along with the direct evidence of discrimination from Lynch's statement, establishes pretext.  The Court has already concluded that Lynch's statement as to his belief about Eikenberg's motivation cannot be considered direct evidence.   Therefore, that leaves only Eikenberg's use of subjective criteria to establish pretext in this argument; and, as Plaintiff herself acknowledges in her responsive briefing, the use of subjective criteria alone is not normally sufficient evidence of pretext.  *See Manning*, 332 F.3d at 882.

Plaintiff argues that because Eikenberg used subjective criteria in making his selection, summary judgment is inappropriate because Guaranty Bank must necessarily have its credibility assessed by a jury.  Plaintiff cites the Court to *Medina v. Ramsey Steel*

*Co., Inc.*, 238 F.3d 674 (5th Cir. 2001) in support of her argument.  The *Medina* court addressed whether an employer could use the employee's failure to meet completely subjective criteria to defeat the employee's discrimination claim at the prima facie stage. *Id.; see also Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 469 (5th Cir. 2001)(at prima facie stage, plaintiff need only demonstrate he met objective promotion criteria; subjective hiring criteria as pretext more appropriate for burden-shifting analysis).  In this case, Guaranty Bank has conceded Plaintiff established a prima facie case of discrimination.  Plaintiff is attempting to use Eikenberg's use of subjective criteria to show pretext in order to meet her burden of showing a genuine issue of material fact exists.  The Court concludes *Medina* is inapposite to this analysis.

The Fifth Circuit's decision in *Manning* is more instructive on this issue.  In *Manning*, the parties conceded the plaintiff, an African-American male, had established a prima facie case of discrimination; the Fifth Circuit then concluded the defendant had established a legitimate, non-discriminatory reason for failing to promote the plaintiff in stating the other two employees were more qualified candidates.  *Manning*, 332 F.3d at 881-82.  With the burden back to the plaintiff, he argued, in an attempt to show pretext, that the defendant's claim the other two employees were more qualified candidates must be pretext because the hiring criteria was mostly subjective.  *Id.* at 882.  The Fifth Circuit disagreed, holding that use of subjective criteria by an employer is not itself sufficient evidence of pretext.  *Id.* (citing *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002)(without evidence that subjective criteria was "mask for

discrimination", an employer's use of subjective criteria will rarely ever establish pretext)).   Just as in *Manning*, Plaintiff has offered nothing more than the use of subjective criteria to show pretext for discrimination, and this alone is not sufficient to establish pretext.  *See id.*

2)      Plaintiff "Clearly Better Qualified"

Plaintiff may also meet her burden to establish pretext by showing that she was "clearly better qualified" than Andrews. *Manning*, 332 F.3d at 882.  Without citing any authority, Plaintiff argues that she is not required to prove she is "clearly better qualified" than Andrews to meet her burden.   Plaintiff's argument is completely unfounded, as caselaw is well-established to the contrary.

In support of her argument that she is more qualified than Andrews for the DFW East position, Plaintiff offers her view:

> Because I am a consistent top performer.  I have a proven track record.  I have developed a staff over several years.  I have a good working . . . knowledge of how to run a branch long-term and in a region world. . . .  I think that I have the HR skills dealing with a high maintenance employee and being high producing at the same time. . . .  I feel like I had more working knowledge of being on all the president's councils over several years.  I felt like I had a working knowledge of what a corporate client was, the climate was, and being able to translate that down to the employees in a positive way.  I got along with all my peers, so I think that I have a good relationship with my peers.  I've had a good relationship with my supervisors, a good relationship with my employees, my customers, the community.  And I have proven that year after year after year after year.

As for Andrews being a top performer, Plaintiff knew he had worked in another banking center, which had been low-performing, and made it high performing, but Plaintiff

argued that was certainly achievable over a short course of a few months or one year as opposed to maintaining that high level for several years.  Plaintiff felt that compared to Andrews, as a Guaranty Bank employee, she had "a longer working knowledge than he did" and she had more success at it.  Plaintiff admits though that she was not aware of Andrews' prior work experience.

Plaintiff stated she did not know what criteria Eikenberg had weighed in making his decision.  However, Plaintiff felt what should be weighed was what an employee had done for the employer in the past and what he/she was currently doing.  Plaintiff did admit that she did not know if Eikenberg had considered that in making his decision.

To establish she is "clearly better qualified" than Andrews, Plaintiff offers her work experience with Guaranty Bank, including her years of employment and her performance record.  Plaintiff argues she has a longer work history at Guaranty Bank than Andrews, having worked there since 1998 and having been a BCM since 2000, whereas Andrews had only four years experience running a banking center.  Plaintiff contends she consistently received favorable reviews and ranked in the top five of more than 100 BCMs, compared to Andrews who qualified only once as a top producer, whose banking center consistently performed lower than Plaintiff's, and who was "not yet there" in achieving his goals.  Plaintiff also argues that she had a good working knowledge of running a banking center, and had extensive experience working with community members in developing community relations.  Plaintiff argues that when comparing her work experience with Andrews, she was "clearly better qualified."

To establish pretext by showing Plaintiff was clearly better qualified, her "qualifications [must] leap from the record and cry out to all who would listen that [she] was vastly–or even clearly–more qualified for the subject job than was [the chosen candidate]." *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993).  The Fifth Circuit has repeatedly held that "'better education, work experience, and longer tenure with the company do not establish that [an applicant] is clearly better qualified.'" *Thomas v. Trico Products Corp.*, 2007 WL 3151800, at *2 (5th Cir. Oct. 26, 2007)(*quoting Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)); *Odom*, 3 F.3d at 846.

Eikenberg stated in his deposition that he did not take into consideration the applicants' past performance, or ranking reports or scorecards.   Instead, he took into account the personal interviews, the feedback from the managers, and the characteristics he sought in the person to fill this position.  The Court notes that although Eikenberg said he received feedback from Lynch that Plaintiff had peer relationship problems, Plaintiff states that Lynch told her Eikenberg never asked him for feedback, and that Lynch did not know anything about Plaintiff having peer relationship problems.  The Court must view the evidence in the light most favorable to Plaintiff.  *See Diebold*, 369 U.S. at 655.  Therefore, the Court must take as true Plaintiff's statement that Lynch never gave Eikenberg feedback about Plaintiff and was not aware of any peer relationship problems Plaintiff had.  *See id.*  Even taking all the evidence in the light most favorable to Plaintiff, the evidence in the record supports Eikenberg's legitimate, non-discriminatory reasons for choosing Andrews.   Eikenberg wanted someone with a

particular management and leadership style who could address the problems facing DFW East, including the turnover and employee morale problems.   Eikenberg concluded Andrews would be well-received by the DFW East Region, evidenced by his supervisors' feedback and his good peer relationships, as well as his familiarity with that region, and its challenges, because he worked in DFW East for the previous year.  *See, e.g., Price*, 283 F.3d at 722-23 (plaintiff met qualifications for job, but employer had specific needs in filling the position because of problems geographical location experienced).

To meet her burden, Plaintiff must provide evidence to the Court  establishing a genuine issue of material fact exists that each of Guaranty Bank's reasons was pretext. Plaintiff is merely asserting that she believes the wrong factors were taken into account, but she makes no showing that Eikenberg's criteria was pretext for gender discrimination, or even that Eikenberg did not take Plaintiff's factors into consideration. Furthermore, Plaintiff makes no showing that her qualifications "leap from the record" and scream out she was the most qualified candidate.  *See Odom*, 3 F.3d at 847. Regardless of what Plaintiff believes Eikenberg should have considered, merely directing the Court to these attributes and facts does not itself evidence pretext.  The Court cannot conclude that Guaranty Bank's legitimate, non-discriminatory reasons are false.

### 3)      Lynch's Statement as Circumstantial Evidence

The Court already concluded Lynch's statement to Plaintiff about Eikenberg wanting someone he could drink beer with and have male bonding time could not be direct evidence.  However, it could still be probative of discriminatory intent if

accompanied by other evidence of pretext. *See Palasota*, 342 F.3d at 577. Because the Court has found Plaintiff did not meet her burden of proving other evidence of pretext, Lynch's statement, standing alone cannot be considered sufficient evidence of pretext. *See id.* (remark may not be sole evidence of pretext to be probative of discriminatory intent). Furthermore, the Court would be hard-pressed to conclude that this statement was probative of discriminatory intent. The statement was made by Lynch, Plaintiff's supervisor, about his own belief as to Eikenberg's motivation for choosing Andrews. Lynch testified in his Declaration that he did not speak with Eikenberg about his selection criteria and had no personal knowledge of Eikenberg making a gender biased comment or taking any action because of gender bias. There is no evidence directly attributing this statement to Eikenberg.

The Court finds Plaintiff has not met her burden to show pretext.

### 4. Conclusion

The Court concludes that Plaintiff has failed to meet her burden of establishing through sufficient evidence a genuine issue of material fact exists that each of Guaranty Bank's reasons are pretext. *See Jackson,* 2009 WL 1437824, at *7 (citing *Wallace*, 271 F.3d at 220). Accordingly, the Court **grants** Guaranty Bank's motion for summary judgment on Plaintiff's gender discrimination claim.

## C. Age Discrimination

Under the ADEA, it is illegal for an employer to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to the terms and conditions

of his employment due to his age.  29 U.S.C. § 623(a)(1).  To prevail on an age discrimination claim, a plaintiff must demonstrate a *prima facie* case of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its decision.  *See Cheetam v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006).

If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact whether the employee's age was a but-for cause of the employer's adverse action.  *Gross v. FBL Fin. Svcs., Inc.*, _____U.S._____, 129 S.Ct. 2343, 2350-51 (2009)(language of ADEA does not authorize mixed-motives age discrimination claim).  Stated another way, the employee must show that the employer's proffered reason for its decision is pretextual, and that age bias is the real reason for the employer's decision.  *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003), *aff'd* 544 U.S. 228 (2005); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).  The evidence offered to counter the employer's proffered reasons must be substantial.  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir.2001)(citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir.2001)).

### 1.    Direct Evidence of Age Discrimination

Plaintiff argues she has direct evidence of discrimination in Lynch's statement to her in a conversation after Andrews was promoted.  The Court has already concluded this statement does not meet the strict test of direct evidence.  Furthermore, even if it was direct evidence, this statement could not be used as direct evidence of age

discrimination, despite Plaintiff's argument to the contrary, since it relates only to Plaintiff's gender.  Nowhere in Lynch's statement does he reference age.

### 2.      Circumstantial Evidence of Age Discrimination

Plaintiff offers the same circumstantial evidence that Guaranty Bank discriminated against her based on her age as she did for her gender claim.  The Court has already concluded that Plaintiff's evidence fails to meet her burden to show that Guaranty Bank's proffered reasons were pretextual as for her gender claim.  The same analysis holds for her age discrimination claim; Plaintiff failed to establish for the Court that her age was the true reason for its decision.  *See Gross*, ___ U.S. ___, 129 S.Ct at 2350; *Smith*, 351 F.3d at 196.  Plaintiff fails to present substantial evidence to counter Guaranty Bank's legitimate, nondiscriminatory reasons.  *See Wallace,* 271 F.3d at 220.

### 3.      Conclusion

The Court finds that Plaintiff has failed to meet her burden related to her age discrimination claim.  Accordingly, the Court concludes summary judgment should be **granted** on this claim as well.

## V.      Guaranty Bank's Motion to Strike Plaintiff's Summary Judgment Evidence

Defendant has moved to strike certain portions of Plaintiff's summary judgment evidence.  The Court finds that it reaches the same conclusions with respect to Defendant's Motion for Summary Judgment whether or not the evidence objected to is considered.  Therefore, Defendant's Objections to and Motion to Strike Portions of Plaintiff's Summary Judgment Evidence is **denied as moot.**

ORDER – PAGE 21

## VI.    Conclusion

Plaintiff has failed to meet her burden showing a genuine issue of material fact exists that each of Guaranty Bank's proffered reasons for failing to promote her are pretext for discriminating against her based on her gender and/or age.  Accordingly, summary judgment is appropriate on Plaintiff's claims.

**SO ORDERED.**

Signed September 2nd, 2009.


_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE